## Union Banking and Trust Co. of DuBois
## v. Johnston

*Edward Cherry,* for plaintiff.
*Denise Niedzielski,* for defendant.

REILLY, *P.J.,* July 28, 1983—

### FINDINGS OF FACT

(1) Plaintiff commenced an action in mortgage foreclosure on February 4, 1982, by filing a complaint.

(2) Defendants filed a timely answer, new matter and counterclaim which raised the defenses that defendants were not in default and plaintiff had violated the Truth in Lending Act, 15 U.S.C. §1601 et seq., and Regulation Z, 12 C.F.R. §226 et seq.

(3) Plaintiff filed a timely answer to new matter.

(4) A hearing was held on November 1, 1982, before the Board of Arbitrators of the Court of Common Pleas of Clearfield County, Pa.

(5) Judgment was awarded by said board in favor of plaintiff and against defendants on November 1, 1982.

(6) On November 19, 1982, notice of appeal from the arbitrators' notice of award was filed by defendants.

(7) A trial was thereafter held before this court sitting without a jury on June 30, 1983, whereafter defendants were granted leave to submit written arguments to the court.

(8) Plaintiff is seeking a money judgment in this action of mortgage foreclosure.

(9) Plaintiff sent a notice of intention to foreclose on mortgage to defendants by certified mail, return receipt requested on December 15, 1981.

(10) As of December 15, 1981, defendants were in default on said mortgage in the amount of $589.68.

(11) As of June 30, 1983, defendants were in default in the amount of $2,837.43, calculated as follows:

| | |
|---|---|
| $1,090.00 | principal |
| 1,671.38 | interest |
| 75.40 | late charges |
| $2,837.43 | |

(12) As of June 30, 1983, the pay-off figure on the mortgage was $8,330.56, calculated as follows:

$6,583.78   principal
1,671.38   interest
  75.40   late charges

$8,330.56

(13) Defendants have not made any payment on the mortgage since May 18, 1982, the date of the last payment.

(14) The transaction which is at the basis of plaintiff's action is a mortgage loan for the purchase of real estate situate in the Township of Sandy, County of Clearfield, and Commonwealth of Pennsylvania, which mortgage was executed by Defendants on October 29, 1980, and thereafter recorded in the Office of the Register and Recorder of Clearfield County in Mortgage Book 371, page 429.

(15) Plaintiff provided defendants with a Disclosure statement dated October 23, 1980, pursuant to the Federal Truth in Lending Act, 15 U.S.C. §1601 et seq., and Regulation Z, 12 C.F.R. §§226.6 and 226.5.

(16) Plaintiff further provided defendants with the Pennsylvania Supplement to Disclosure Statement as required by the Real Estate Settlement Procedures Act of 1974.

(17) The existence of an acceleration clause was revealed only in the mortgage agreement itself at paragraph 6 thereof, and not in any disclosure statement.

(18) Defendants had income during the year of 1982, although defendant Ralph Johnston testified he has not worked since the late summer of 1982 and has received public assistance since November, 1982.

(19) Evidence as to plaintiff's attorney's fees in this matter was presented through the testimony of Toni M. Cherry, Esq. Ms. Cherry testified that the usual rate charged by the firm of Gleason, Cherry and Cherry, P.C., is $100 per hour and that from March of 1982, to the time of the hearing on June 30, 1982, 28 hours had been spent by the attorneys for the plaintiff on the case.

(20) Six hours of the 28 hours spent on the case by the attorneys for plaintiff in this matter were spent in travel time between Clearfield and DuBois, although Ms. Cherry testified that all of said time was utilized for legal work.

(21) Plaintiff requests attorney's fees in the total amount of $2,000.

(22) No evidence was presented at trial by defendants to refute the reasonableness of the rate charged by plaintiff's attorneys.

## CONCLUSIONS OF LAW

(1) This case is brought under the provisions of Pa. R.C.P., Rule 1001-1048 and 1141-1150.

(2) The provisions of Pa.R.C.P. 3170 to 3183 inclusive do not pertain to this action as it is not an execution on a money judgment.

(3) A party waives all defenses and objections which he does not present either by preliminary objection, answer or reply, except certain limited defenses not here applicable. Pa.R.C.P., 1032.

(4) A party may, however, amend its pleading to bring the same into conformity with the evidence presented at trial at any time either by leave of court or filed by consent of the adverse party. Pa. R.C.P. 1033.

(5) The disclosure statements and the Pennsylvania Supplement to Disclosure Statement given to

defendants by plaintiff on or about October 23, 1980, fully complied with all disclosure requirements of the Federal Truth in Lending Act (15 U.S.C. §1601 et seq.), Federal Reserve Board Regulation Z (12 C.F.R. §226 et seq.), and Pennsylvania Act 6 of 1974 (41 P.S. §101 et seq.)

(6) The mortgage agreement entered into by the parties on December 20, 1978, is not a disclosure statement under either the Federal Truth in Lending Act or Act 6 of 1974, and defenses based on said statutes may not be raised with regards to language contained in or omitted from said mortgage agreement itself unless the same is in conflict with that of the Disclosure Statements and the lender is relying on the terms of said mortgage in place of the disclosure statements as the basis for his action. Cf. Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935 (9th Cir. 1975).

(7) The Truth in Lending Act does not require the disclosure of the existence of an acceleration clause. See: Ford Motor Credit Co. v. Milhollin, 444 U.S. 555 (1980).

(8) The mere fact that an acceleration clause is revealed in a mortgage agreement itself does not impose upon a lender any duty with regards to also revealing defenses thereto such as a debtor's right to claim an exemption in any deficiency and the right to challenge foreclosure procedures and attorneys'· fees. Cf. Veney v. First Virginia Bank — Colonial, 535 F. Supp. 181 (1982).

(9) Plaintiff did not violate the Truth in Lending Act by including allegedly misleading and confusing clauses with respect to defendants waiving errors in foreclosure proceedings and all statutory exemptions in paragraph 6 of the mortgage. First, the court has previously concluded that the mortgage itself is not part of the disclosure statements covered

by the Truth in Lending Act or Pennsylvania Act 6 of 1974. (Conclusion of Law, No. 6). Therefore, while said clauses may indeed be unenforceable under state law, the same cannot be the basis of alleged Truth in Lending or Act 6 violations. Secondly, there has been no foreclosure for plaintiff to proceed on in this matter, nor has there been a levy or sale. The issues of whether defendants will be precluded from raising errors in said procedures or from claiming their statutory exemptions from levy and sale are not now before the court and are not otherwise ripe for decision.

(10) The notice of intention to foreclose on mortgage given defendants in this case fully complied with the requirements of §403 of the Act of January 30, 1974, P.L. 13, 41 P.S. §403.

(11) Plaintiff is entitled to only those attorney's fees which are reasonable and actually incurred. 41 P.S. §406.

(12) Plaintiff did not, however, violate said section 406 by providing for a fixed percentage attorney's fee in the mortgage since in determining whether a fee is unreasonable, the method of calculating the same has little relevance. Rather, it is the actual fee charged which must meet the test. First Eastern Bank N.A. v. Thomas, 5 D. & C. 3d 71, 72-73 (1977). A fixed percentage may, therefore, be provided for under section 406 as an estimate of the actual fees to be incurred, and may also be collected so long as the percentage accurately reflects the actual fee costs.

(13) 22 billable hours were spent by the attorneys for plaintiff in this matter from March of 1982 to the time of the hearing in this matter on June 30, 1983, six hours of the original 28 hours of attorneys' time being spent in travel between DuBois and

Clearfield and thus not reasonably recoverable by plaintiff.

(14) Defendants are not entitled to an equitable stay of this action, even if the court has the power to do the same, since they had income after May of 1982 and nevertheless failed to make even a partial payment on the mortgage from that date. Moreover, defendants submit that they are currently able to resume making payments, but they have not yet done so.

## MEMORANDUM AND ORDER

Following hearing into the above-captioned matter and briefs from counsel, the court issues this memorandum and order having reached the findings of fact and conclusions of law attached hereto and made a part hereof. No question seems to exist that defendants are in fact in default on the mortgage which is the subject of this action. Rather, as a defense thereto, defendants raise several issues alleging various violations of the protective provisions of the Federal Truth in Lending Act, 15 U.S.C. §1601 et seq., and Federal Reserve Board Regulation Z, 12 C.F.R. §226 et seq., as well as a challenge to the reasonableness of the attorney's fees charged by counsel for plaintiff under 41 P.S. §406. Defendants also seek equitable relief in the form of a stay of this action pursuant to the court's inherent equitable powers.

First, with regards to plaintiff's alleged truth in lending violations, defendants assert that plaintiff violated said act by disclosing the existence of an acceleration clause in the mortgage agreement itself rather than in the required disclosure statement. The Supreme Court of the United States has, however, recently ruled that the Truth in Lending Act

does not require the disclosure of the existence of an acceleration clause in the disclosure statement. Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980). Defendants' argument is, therefore, obviously without merit.

Defendants nevertheless further argue that since plaintiff did choose to reveal the acceleration clause in the mortgage agreement, it violated the Truth in Lending Act by not also revealing defendants' rights under state law with respect thereto, citing Veney v. First Virginia Bank — Colonial, 535 F. Supp. 181, 190 (1982). Defendants' reliance on that case is, however, misplaced. Veney involved a situation wherein a lender had revealed an absolute acceleration right upon default without also mentioning a ten-day grace period provided by Virginia law for debtors as a limitation on that right, during which period the debtor had the right to cure that default and thereby stop acceleration. The instant case involves no such limitation. Rather, defendants argue that plaintiff violated the Truth in Lending Act when it revealed its acceleration right without also revealing defendants' rights to claim an exemption in any deficiency and to challenge foreclosure proceedings and attorney's fees. Unlike Veney, however, here rights of a debtor do not in any way limit, alter, or otherwise affect plaintiff's right to accelerate upon default, nor do they provide defendants with any means to stop or prevent acceleration. There existed, therefore, no duty on the part of plaintiff to reveal the same together with the acceleration clause.

Defendants second truth in lending defense is that plaintiff made disclosures in the mortgage agreement itself which purportedly contravened state law, and as such violated the Truth in Lending Act in that the same tended to mislead and confuse

the borrowers. Said disclosures include having defendants purport to waive errors in foreclosure, to waive their right to claim exemptions in any levy and sale, and to agree to a fixed percentage attorney's fee. (See: Mortgage, para. 6, Exhibit no. 1).

The court notes at this point, however, with respect to said defenses as well as the above-noted defense with respect to the acceleration clause, defendants are raising truth in lending defenses to terms of the mortgage agreement itself rather than to the disclosure statements previously provided by plaintiff. It is defendants' position in this regard that such terms constitute "additional information" disclosures pursuant to 15 U.S.C.A. §1632(b), and as such are thereby subject to Truth in Lending defenses. Defendants, however, cite no specific authority for their position. In fact, at least one case they do cite in their brief to the court, viz., Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935 (9th Cir., 1975), implies that the same are not disclosures under the Truth in Lending Act.

In Ljepava, the court held that a lender could not rely on disclosures made outside the disclosure statements and in the note or other evidence of indebtedness to bring said disclosure statement into conformity with the Truth in Lending Act. The court thus implied that terms outside of the disclosure statements required to be supplied to debtors prior to their entering into a covered credit arrangement are not "disclosures" within the meaning of the Truth in Lending Act. With that in mind, this court is of the opinion that Truth in Lending defense may not be raised with respect to terms or documents other than the required disclosure statements unless said terms or documents are in conflict with the terms of the disclosure statement and the lender is relying on said terms or documents in

place of the disclosure statement as the basis for his action. The court therefore concludes that the mortgage in this case is not a disclosure statement within the meaning of the Truth in Lending Act.

As such, even though the above-noted complained of terms may be unenforceable under state law, they are not "additional information" subject to Truth in Lending defenses since they do not conflict with any of the required or otherwise disclosed information contained in the disclosure statements provided in this matter. In addition, the court further agrees with plaintiff that in this case there has been no foreclosure as of yet, nor has there been a levy and sale of property of the debtors. The issues of whether defendants will be asked to waive errors in foreclosure proceedings or their right to exemptions in levy and sale are not, therefore, now before the court or otherwise ripe for decision. The court shall not, therefore, further consider the same as defenses at present.

Defendants' next challenges to plaintiff's action are that the fixed percentage of five percent of the total indebtedness for attorney's fees provided for by the mortgage in this matter violates state law and that the fee actually charged, to wit, $2,000, is otherwise unreasonable. The court agrees with defendants that plaintiff is entitled in this case only to those attorney's fees which are reasonably and actually incurred. 41 P.S. §406. This court also agrees, however, with the court in Columbia County that a fee is not per se unreasonable under section 406 simply because it is based on a fixed percentage. See: First Eastern Bank N.A. v. Thomas, 5 D. & C. 3d 71 (1977). As the court there stated:

". . . in determining whether a fee is in fact unreasonable under section 406, the method of calculating the fee has little relevance . . .

"Clearly, section 406 does not require that the method for *calculating* the fee be reasonable. Rather section 406 plainly concerns the reasonableness of the *actual fee* charged, whatever the method of calculation." (Emphasis in original.), id., at 72-73. A fixed percentage may, therefore, be provided for under section 406 as an estimate of the actual fees to be incurred, and may also be collected so long as the percentage accurately reflects the actual fee costs.

In reviewing the testimony given in this matter regarding fees, the court has found that the attorneys for plaintiff have spent 28 hours on the case from March of 1982 to the time of the hearing on June 30, 1983. Of these, the court finds that 22 hours are billable, six hours being spent in travel time between DuBois and Clearfield and thus not reasonably recoverable. Since the testimony also reflected that the standard fee of the firm of Gleason, Cherry and Cherry, P.C., is $100 per hour, and since defendants put on no evidence to counter the reasonableness of the same, the court, therefore, finds that plaintff is entitled to its requested attorneys' fees, to wit; $2,000.

The court notes that plaintiff also prays the court award it the additional sum of $669.40 as representative of the unpaid real estate taxes on the property for the years 1981 and 1982. At this point, however, plaintiff is not entitled to the same as it does not yet hold title to said property, nor has it fallen under any duty to pay the same. The court, therefore, declines to award said sum to plaintiff.

Defendants lastly pray that this court exercise its inherent equitable powers to stay this proceeding based on defendants' lack of work and good faith effort to meet their obligation. While the court may have such power, it is unwilling to exercise the

same in this case since defendants have had income since May of 1982 and have nevertheless not made even partial payments on the mortgage since that date. Moreover, defendants submitted to the court that they are currently able to resume said payments, but they have not done so.

Wherefore, the court enters the following

### ORDER

Now, July 8, 1983, after hearing into the above-captioned matter, and following the court's findings of fact and conclusions of law herewith attached, it is the order of this court that judgment be and is hereby entered in favor of plaintiff and against defendants in the amount of $8,330.56, representing the amount owing to plaintiff as of June 30, 1983, together with interest and costs.

It is the further order of this court that judgment be and is hereby entered in favor of Edward V. Cherry, Esq., and against defendants in the amount of $2,000, being the recoverable attorney's fees in the matter.